UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KERI JO LASIEGE,

                              Plaintiff,

v.                                                        7:12-CV-01398
                                                          (NAM/TWD)
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF                            VICTORIA M. ESPOSITO, ESQ.
  NORTHEASTERN  NEW YORK
*Counsel for Plaintiff*
P.O. Box 648
17 Hodskin Street
Canton, New York 13617

HON. RICHARD S. HARTUNIAN                       PETER W. JEWETT, ESQ.
United States Attorney for the                  Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
James T. Foley U.S. Courthouse, Room 218
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                       STEPHEN P. CONTE, ESQ.
Social Security Administration                  Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

    This matter was referred to the undersigned for report and recommendation by the

Honorable Norman A. Mordue, United States Senior District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in

accordance with General Order 18 of this Court, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 12 & 13.) Oral argument was not heard. For the reasons discussed herein, it is recommended that the matter be remanded to the Commissioner for further proceedings consistent with the findings set forth below.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is thirty-eight years old with a date of birth of April 13, 1975. (T. at 24.[1]) She testified at a hearing on November 9, 2010, that she completed high school and attained an associates degree. *Id*. at 35. She attended college for a semester and a half before her doctor advised her to stop attending class to due to her reports of severe headaches and neck pain. *Id*. at 20. Plaintiff's past work experience includes working as an aide to mentally disabled adults and children. *Id.* at 153. She worked with the disabled for the Arc, the Canton Area School District, a daycare, and a group home. *Id*. at 35-38. She has some managerial experience as an aide worker. *Id.* at 38-39, 153. Plaintiff also briefly drove a taxi. *Id*. at 69. She alleges disability primarily due to  nerve damage in her neck as well problems with her arms and hands. *Id*. at 19, 57, 162.

Plaintiff applied for disability insurance benefits and SSI on September 3, 2009. *Id*. at 16. The application was denied on January 5, 2010. *Id*. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. The hearing was held on November 9, 2010. *Id*. On December 27, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 13.

---

[1]      Citations identified as "T" reference the Administrative Transcript (Dkt. Nos. 9-2 through 9-7) and the pages set forth in that document.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 1, 2012. *Id*. at 1. Plaintiff commenced this action on September 13, 2012. (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2007). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find

3

> nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.  THE ALJ'S DECISION

The ALJ made the following findings:

1.  "The claimant met the insured status requirements of the Social Security Act through December 31, 2011." (T. at 18.)

2.  "The claimant has not engaged in substantial gainful activity since October 6, 2006, the alleged onset date" of disability. *Id*.

3.  "The claimant has the following severe impairment: degenerative disc disease in the neck with radiating pain in the left shoulder, arm, and hand." *Id*.

4.  "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 19.

5.  The "claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except for: she should avoid overhead use of her arms; she is able to perform fine manipulation with her hands; and she is required to take a 10 minute break every two hours." *Id.*

6.  Considering the relevant factors, "there are jobs that exist . . . that the claimant can perform," therefore she is not disabled. *Id.* at 24.

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by improperly evaluating Plaintiff's credibility. (Dkt. No. 12 at 22-24.) Plaintiff also claims the ALJ erred by incorrectly weighing the evidence at Step 2 of the analysis, in determining her residual functional capacity ("RFC"), and in failing to obtain the testimony of a vocational expert. *Id.* at 17-22.

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence; thus, it should be affirmed. (Dkt. No. 13.)

## V.    DISCUSSION

### A.    Plaintiff's Credibility

The ALJ considered Plaintiff's testimony and alleged functional limitations as well as the extent to which such allegations could be reasonably accepted as consistent with the

objective evidence of record.  (T. at 23; *see also* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.)

After carefully reviewing all of the evidence, the Court finds that the ALJ properly determined

that Plaintiff's allegations regarding her functional limitations and complaints of pain were not

entirely credible.  *See id.* at 15.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but

must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96-cv-9435(JSR), 1999 U.S. Dist. LEXIS 4085,

at *15, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence

rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence

in the record.  20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-cv-

1858(RSP/GJD), 1998 U.S. Dist. LEXIS 2751, at *2, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3,

1998); SSR 96-7p.  First, the ALJ must consider whether there is an underlying medically

determinable physical or mental impairment(s) that could reasonably be expected to produce the

claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as

to the intensity, persistence, or functionally limiting effects of the claimant's pain or other

symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the

claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*

An individual's statements about his pain are not enough by themselves to establish the existence

of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be

expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. *Id.* When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3).

These factors need not lead an ALJ to "totally accept or totally reject the individual's statements." SSR 96-7p. Instead, an ALJ "may find all, only some, or none of an individual's allegations to be credible." *Id*. Moreover, the ALJ may "also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree." *Id*.

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, 00 Civ. 9621(JSR)(FM), 2003 U.S. Dist. LEXIS 6988, at *29-30, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, 96 Civ. 9718 (MBM),

1998 U.S. Dist. LEXIS 11595, at *19, 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Here, Plaintiff's counsel acknowledged during the hearing before the ALJ that the record contains "conflicting medical evidence" and asked the ALJ to "rely on [Plaintiff]'s testimony regarding the pain, the effects and limitations resulting from the pain." (T. at 34.) Although the ALJ found that Plaintiff's medically determinable impairment could cause her alleged symptoms and that her "subjective complaints" were "generally creditable," the ALJ ultimately determined that Plaintiff exaggerated the intensity, persistence and limiting effects of her alleged symptoms. *Id*. at 21, 24. The ALJ set forth three reasons for his conclusion. *Id*. at 24. First, the ALJ found "the fact that the claimant settled her workers' compensation claim without provision for on-going medical care" showed that "she believed her condition not to require much in the way of continuing medical care or treatment" and, therefore, "significantly detract[ed] from her creditability[.]" *Id*. Second, the ALJ noted that Plaintiff's allegation of severe pain was inconsistent with the over one year gap in the medical record in which she did not require medical care. *Id*. Third, the ALJ stated that Plaintiff's "activities of daily living are not consistent with her allegation that she is disabled while also caring for three young children and entering into a recent marriage." *Id*.

Plaintiff argues that the ALJ inappropriately considered her workers' compensation settlement and her activities of daily living. (Dkt. 12 at 22-23.) Further, she asserts that "the ALJ should have considered Plaintiff's work history in assessing her credibility." *Id*. at 23.

1.    *Workers' Compensation Settlement*

One basis for the ALJ's doubt of Plaintiff's credibility regarding the extent of her symptoms and their limiting effect is the terms of her workers' compensation settlement.[2] (T. at 24). The ALJ determined that the 2008 settlement undermined Plaintiff's credibility because it did not provide for on-going medical care after the date of the settlement approval which demonstrated that "she believed her condition not to require much in the way of continuing medical care or treatment." *Id*. at 24; *see also* T. at 136-37. The ALJ found this inconsistent with Plaintiff's claimed disability since 2006 and the claimed severity of her impairments, pain and numbness. *See id*. at 16, 24. Further, the ALJ found it suspect that Plaintiff required little or no medical treatment "just prior to filing a Social Security claim[.]" *Id*. at 24.

Plaintiff posits two arguments that the ALJ's findings in this regard are faulty. (Dkt. 12 at 22.) First, Plaintiff points to her hearing testimony, in which she stated that "she agreed to the settlement on the advice of her attorney and that the possibility that she would be giving up medical care was not explained to her." *Id*. (citing T. at 43-44.) Second, she argues that the settlement agreement does not necessarily foreclose the possibility of receiving on-going medical care. *Id*. (citing T. at 138.)

However, even if one accepts that Plaintiff did not knowingly foreclose the possibility of on-going care by settling her workers' compensation claim, the ALJ's point still holds. Plaintiff did not take the positive step of ensuring payment for continued medical treatment as part of her

---

[2]      The ALJ lists this reason first in his list of rationales and describes it as "significantly detract[ing] from [Plaintiff's] creditability in terms of the severity of her impairment." (T. at 24.) During Plaintiff's hearing, the ALJ engaged her in an extended soliloquy about this issue and requested that he be provided a copy of the settlement agreement. *Id*. at 42-45, 75.

workers' compensation settlement. The fact that the workers' compensation settlement did not provide for on-going medical care casts some doubt on Plaintiff's claim that she was suffering from severe pain. Plaintiff also argues a workers' compensation settlement is an inappropriate basis for doubting a claimant's credibility because it is not one of the factors listed in 20 CFR §§ 404.1529(c), 416.929(c), or SSR 96-7p. However, I find this argument unpersuasive as the ALJ considers "all of the evidence presented" in evaluating the intensity and persistence of a claimant's symptoms. 20 CFR § 404.1529(c)(3).

More significantly, Plaintiff's credibility is further eroded by inconsistencies between her testimony before the ALJ, the terms and timing of her workers' compensation settlement, and her application for Social Security benefits. (*See* T. at 43-45, 108, 138.) During the hearing, Plaintiff testified that she believe her attorney had filed for Social Security benefits on her behalf at the time she agreed to the worker's compensation settlement, November 20, 2008. *Id*. at 43. Yet, the settlement agreement states that Plaintiff had not applied for Social Security. *Id.* at 138. Moreover, when Plaintiff applied for Social Security less than a year later, she claimed that she had not filed for workers' compensation. *Id.* at 108. These inconsistencies, coupled with her medical history and activities of daily living as discussed below, provide compelling and substantial evidence to support the ALJ's determination of Plaintiff's credibility.

2.    *Medical History*

Perhaps the greatest inconsistency in Plaintiff's disability claim is the gap in treatment over a two year period in which she did not seek treatment for her neck and related symptoms. *Id*. at 24, 250, 355. Plaintiff alleges disability beginning October 6, 2006. *Id*. at 16. Between October 2005 and October 2006, Plaintiff consulted a host of different medical providers about

her neck pain and its effects on her arms. *See generally id.* at 211-256. On October 6, 2006, she had her initial appointment with Michael Ackland, M.D. *Id.* at 257-258. She visited Dr. Ackland on only four other dates in November 2006, December 2006, January 2007 and April 2007. *Id.* at 250-60.

Plaintiff did not again seek treatment for her neck until September 24, 2009, well over two years after her last appointment with Dr. Ackland. *Id.* at 250, 355. During this period, Plaintiff did, however, receive medical care at two office visits from Physician Assistant Allison Smith ("PA Smith") for other issues.[3] *Id.* at 355-66. On October 30, 2008, Plaintiff established medical care with PA Smith who reported Plaintiff to be a "healthy female," who "denies headaches." *Id.* at 362-63. Plaintiff next visited with PA Smith in June 2009 for a gynecological examination. *Id.* at 358-61. Although PA Smith noted Plaintiff's history of neck problems, she again found her to be a "healthy 34-year-old female." *Id.*

On September 24, 2009, Plaintiff saw PA Smith for a third (and final) appointment. *Id.* at 355. It was during this appointment that Plaintiff first complained to PA Smith of debilitating neck pain. *Id.* PA Smith noted that the last medical professional with whom Plaintiff had consulted about her neck problems was Dr. Ackland, whom she had not seen "in several years." *Id.* Plaintiff acknowledges the gap in treatment for her neck but offers no explanation for it. (Dkt. 12 at 9-10.) Based in part on this gap in treatment, I find the ALJ had substantial evidence to conclude that Plaintiff's testimony regarding the intensity, persistence and limiting effects of her alleged pain was not entirely credible. *Cf. Lewis v. Apfel,* 62 F. Supp. 2d at 651 (ALJ weighs

---

[3]     PA Smith's medical notes are cosigned by Adam Jarrett, M.D. However, all diagnostic tests were reviewed by PA Smith. (T. at 364-66.) Plaintiff also indicated that she treated with PA Smith. *Id.* at 166.

objective medical evidence when determining credibility) (citation omitted).

The timing of her Social Security benefits claim further casts doubt upon Plaintiff's credibility. Plaintiff's renewed complaints of neck pain occurred within a month of her filing for Social Security. (T. at 16, 355.) Despite claiming disability beginning in October 2006, Plaintiff did not file for Social Security benefits until September 2009, nearly three years later.[4] *Id.* at 16.

Further, the ALJ "gave great" weight to the opinion of Dr. Justine Magurno, who stated that Plaintiff was able to work with some limitations since she had no trouble sitting, standing, walking or with fine motor activities. *Id.* at 23, 371-75. Although the ALJ did not specifically mention Dr. Magurno's opinion as a factor for his credibility determination, Dr. Magurno's opinion further erodes Plaintiff's claim of disabling pain and numbness.

3.    *Activities of Daily Living*

A third factor which the ALJ found to weaken Plaintiff's credibility was her activities of daily living. *Id.* at 24. The ALJ stated that her "activities of daily living are not consistent with her allegation that she is disabled while also caring for her young child and entering into a recent marriage." *Id.* Although ALJs must consider claimants' activities of daily living (20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii)), "it is well-settled that '[s]uch activities do not by themselves contradict allegations of disability,' as people should not be penalized for enduring

_____

[4]      The ALJ pressed Plaintiff on this point during her hearing. (T. at 45.) Plaintiff responded that the reason she waited until September 2009 to file was because she believed that her Social Security claim had already been filed by her attorney. *Id.* However, she also suggested, seemingly in the alternative, that the reason she waited was because her lawyer told her that she had to wait until her workers' compensation claim was settled. *Id.* As noted above, when she signed her worker's compensation settlement in November 2008, she stated that she had not filed Social Security (despite her stated belief to the contrary); and when she filed for Social Security in September 2009, she claimed that she had not filed for workers' compensation. *Id.* at 45, 108, 138.

13

the pain of their disability in order to care for themselves." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 69 (N.D.N.Y. 2012) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)). However, activities of daily living may detract from one's credibility where there are other reasons for skepticism. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (affirming an adverse credibility judgement where the ALJ relied in part on the fact that Plaintiff "was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer").

Here, the ALJ noted Plaintiff's activities of daily living as a supplementary, as opposed to the sole, reason for doubting her statements about the intensity of her pain. As demonstrated above, the workers' compensation settlement without reservation of medical treatment, the inconsistencies between Plaintiff's statements in the record, and the gaps in her medical treatment are other stated reasons the ALJ questioned her credibility regarding her subjective pain complaints. However, the ALJ correctly noted that Plaintiff was able to: (1) care for her five-year old, eight-year old, and ten-year old children, including swimming with them and taking them camping (T. at 20, 24, 46, 50-51); (2) do some laundry, folding, and dishes (*id.* at 19); drive short distances (for thirty minutes or less) (*id.* at 20-21); (3) entertain house guests and socialize three to four times per week (*id.* at 19, 51); and (4) pass the time reading, watching and doing light chores with periodic breaks (*id.* at 20, 49).

4.    *Work History*

Finally, Plaintiff argues that the ALJ's failure to specifically address Plaintiff's work history during his credibility determination constitutes reversible error. (Dkt. 12 at 23-24.)

Although "a good work history may be deemed probative of credibility," it "is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). "When the ALJ's analysis contains substantial evidence supporting the conclusion, the fact that plaintiff's good work history is not specifically referenced in the opinion does not undermine the credibility assessment." *Gorman v. Comm'r of Soc. Sec.*, No. 5:12–CV–0939 (LEK/ATB), 2013 U.S. Dist. LEXIS 112251, at * 10, 2013 WL 4049978, at *17 (N.D.N.Y Aug. 9, 2013) (citing *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (other citation omitted)); *see also Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) ("[O]ther factors—in particular, the inconsistency between Campbell's testimony and his medical records—weighed against a positive credibility finding as to Campbell's subjective assessment of the intensity of his symptoms. The ALJ's decision not to rely exclusively on Campbell's good work history was therefore not erroneous.").

Here, although the ALJ does not expressly address Plaintiff's work history during his credibility determination, the ALJ decision does refer to Plaintiff's work experience. (T. at 20.) The opinion noted that Plaintiff had worked full time in the past, discussing some of the various positions she has held working with disabled children and adults, and referenced her completion of a semester and a half of college. *Id*. The ALJ also mentioned the Plaintiff's attempt to work part time as a taxi cab driver in 2008 and her stated desire to return to work. *Id*. at 21. Further, the opinion refers to Plaintiff's attempts to find work through a state agency designed to help individuals with disabilities find employment. *Id*.

Additionally, Plaintiff's claims in her brief regarding the extent of her work history are beyond what is supported by the record. (*See* Dkt. 12 at 23.) She states that her "work history

stretches back to at least 1989." *Id*. Yet, the employment records in the administrative transcript only go back as far as 1995. (T. at 122, 153, 181.) Moreover, it does not appear that Plaintiff worked full time consistently between 1995 and 2006. *Id*. at 122-25. Plaintiff's employment record during this period clearly does not rise to such a level that would cast doubt on the ALJ's credibility determination. *See Rivera* v. *Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983) (finding error where the ALJ failed to afford the plaintiff "substantial credibility" in light of his thirty-two year employment history); *Knighton* v. *Astrue,* 861 F. Supp. 2d at 69 (twenty year employment history should have afforded plaintiff "enhanced credibility").

"After careful consideration of the evidence," the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her stated symptoms were not entirely credible. The ALJ articulated his reasons with sufficient specificity for determining his disbelief of Plaintiff's claims, and I find the ALJ's determination of credibility to be supported by substantial evidence. Although the ALJ did not expressly discuss Plaintiff's work history in his credibility analysis, it does not constitute reversible error. *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (failure to specifically reference plaintiff's good work history not fatal to ALJ's credibility determination where substantial evidence aside from work history supported adverse credibility ruling) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)).

**B.     Step 2: Severity**

Plaintiff asserts that the ALJ committed reversible error by finding that "Plaintiff suffered only from the medically determinable impairment of degenerative disc disease with radiating pain" despite the fact "that she has also been diagnosed with cervical spondylosis, neck pain brachialgia, radicular syndrome, chronic neurological lesion, impingement syndrome, cervical

facet radiculopathy, cervical headaches, and myofascial pain syndrome." (Dkt. 12 at 17.) In particular, Plaintiff contends that it was error for the ALJ not to find Plaintiff's headaches as severe because the record is replete with references to Plaintiff's headaches and "she specifically stated that her headaches (among other conditions) prevented her from working." *Id.* at 18.

In response, Defendant argues that the ALJ's finding at step two encompasses all of the conditions that Plaintiff claims it lacks and that just because "Plaintiff's condition has taken on various diagnoses does not mean that the ALJ's finding did not account for Plaintiff's impairments." (Dkt. No. 13 at 4-5.[5]) With regard to Plaintiff's headaches, Defendant notes that "the ALJ expressly considered Plaintiff's allegations about her headaches in the residual functional capacity portion of the decision." *Id.* at 5. Finally, "any error at step two," Defendant argues, "was remedied because the ALJ's analysis proceeded beyond that step." *Id.*

As the ALJ noted in his decision, Plaintiff testified that the primary basis for her disability claim is neck pain, which results in headaches as well as pain and numbness in her left arm and shoulder. (T. at 20, 41-42, 45-46, 57.) Although Plaintiff lists several diagnoses she received for her condition, all of them are related to, or symptoms of, this underlying impairment from a specific injury.[6] *Id.* at 41-42, 208, 211, 218-19, 257, 420, 425-26. As a result, the ALJ did not err in failing to designate each particular diagnosis as a severe impairment.

While the ALJ did not specifically mention headaches during the step two analysis (*id.* at

---

[5]     Page numbers in citations to the Defendant's brief refer to the actual page numbers of that document rather than the page number assigned by the Court's electronic filing system.

[6]     Working as an aide, Plaintiff was injured when a "mentally handicapped client pulled her hair and yanked head." (T. at 211; *see also* 218-19.)

18), even if Plaintiff's headaches do constitute a severe impairment independent of, rather than a symptom of, the underlying condition, this "does not in and of itself require remand." *See Chandler v. Soc. Sec. Admin.*, No. 5:12-cv-155, 2013 U.S. Dist. LEXIS 82031, at *29-30, 2013 WL 2482612, at *10 (D. Vt. June 10, 2013[7]) (Reiss, CJ). "An ALJ's failure to make an explicit finding of a step-two impairment where substantial evidence supports the presence thereof" does not require remand unless "the omitted impairment was not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error prejudiced the claimant at later steps in the sequential evaluation process." *Id*. (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the claimant's impairments during subsequent steps)); *Stanton v. Astrue*, 370 F. App'x 231, 233 & n.1 (2d Cir. 2010) (noting in dicta that remand was not warranted where the ALJ found plaintiff's disc herniation non-severe but identified other severe impairments so the claim proceeded through the sequential evaluation and all symptoms were considered).

Here, the ALJ did not find that Plaintiff's headaches constituted a severe impairment, nor did the ALJ find that Plaintiff's headaches were non-severe. (T. at 18.) Instead, the ALJ did not discuss Plaintiff's headaches during the step two analysis. *Id*. However, the ALJ found that Plaintiff had a severe impairment of degenerative disc disease in the neck with radiating pain in the left shoulder, arm, and hand. *Id*. As a result, the ALJ proceeded with the sequential evaluation process. *Id*. at 19-25. Moreover, during the RFC determination, the ALJ explicitly noted Plaintiff's headaches. *Id*. at 19, 20, 23. The ALJ's decision makes clear that he

_____

[7]    Where, as here, there is a discrepancy between the Westlaw and LEXIS citation dates, the Westlaw date is used.

"considered all symptoms" of Plaintiff and "the entire record." *Id.*

In sum, even if the ALJ erred in failing to find Plaintiff's headaches to be a severe impairment, such an error would be harmless. *See Pavia v. Astrue*, Civil Action No. 5:10–cv–818 (GTS/DEP), 2012 U.S. Dist. LEXIS 137173, at *29-31, 2012 WL 4449859, at *9-10 (N.D.N.Y Aug. 20, 2012) (finding the ALJ's error in not considering Plaintiff's headaches at step two was harmless where her RFC determination took them into account); *see also McCartney v. Comm'r of Soc. Sec.*, No. 07–1572, 2009 U.S. Dist. LEXIS 39238, at *50, 2009 WL 1323578, at *16 (W.D.P.A. May 8, 2009) (Lenihan, MJ) ("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments.").

## C. Step 3: Residual Functional Capacity

Next, Plaintiff contests the ALJ's RFC determination. (Dkt. 12 at 18-22.) First, Plaintiff asserts that the ALJ erred in weighing PA Smith's opinion, arguing that "as the physician's assistant had been treating Plaintiff since 2008 and was her primary care provider, her opinion should have been given 'special consideration.'" *Id*. at 19-20 (citing *Duell v. Astrue*, No. 08-CV-0969, 2009 U.S. Dist. LEXIS 122269, 2010 WL 87298 (N.D.N.Y. Jan. 05, 2010) (Hurd, DJ)).

In *Duell*, the Court held that the ALJ erred by failing to make clear whether he had given a nurse practitioner's RFC determination sufficient consideration. 2010 WL 87298, at *6. Under SSA regulations, nurse practitioners and physician assistants are considered "other sources" rather than "medical sources." 20 C.F.R. § 404.1513 (a), (d)(1). As a result, a

19

physician assistant's opinion is "clearly not entitled to the controlling weight afforded to treating physician's opinions," under the "treating physician's rule."[8] *See Duell*, 2010 WL 87298, at *6; *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983). The ALJ "has the discretion to determine the appropriate weight to accord the other source's opinion based on all the evidence before him." *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995).

Although not afforded controlling weight, "the Second Circuit has long recognized that the opinions of a[n] [other source] who regularly treats a claimant is entitled to 'some extra consideration.'" *Duell*, 2010 WL 87298, at *6 (citing *Mongeur*, 722 F.2d at 1039 n.2). This is particularly true when a claimant lives "in the very rural 'North Country' of New York State," where a physician assistant or nurse practitioner may be "the only medical professional available . . . for long stretches of time." *Kohler v. Astrue*, 546 F.3d 260, 268-69 (2d Cir. 2008); *see also Martin v. Colvin*, Civ. No. 8:11-cv-1431 (RFT), 2013 U.S. Dist. LEXIS 69214, at *51-54 (N.D.N.Y. Mar. 29, 2013)[9]; *McAuliffe* v. *Astrue*, No. 09-cv-1428 (FJS/VEB), 2011 U.S. Dist. LEXIS 12504, at *23-27, 2011 WL 551212, at *9-10 (N.D.N.Y. Jan. 24, 2011).

Despite Plaintiff's contention that her primary care provider appears to have been PA Smith, the record does not reflect PA Smith "regularly treat[ed]" her in such a fashion that would

---

[8]     "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." *de Roman v. Barnhart,* No. 03–cv–0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003). The rule requires ALJs to give controlling weight to treating physicians' opinions when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart,* 362 F.3d 28, 31-32 (2d Cir. 2004); *Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir. 2000).

[9]     A Westlaw citation is unavailable for this case.

warrant "some extra consideration." *See Duell*, 2010 WL 87298, at *6. In this regard, PA Smith's opinion differs in significant ways from the other source opinions in *Kohler*, 546 F.3d at 268-69, *Duell*, 2010 WL 87298, at *6 and *Martin*, 2013 U.S. Dist. LEXIS 12504, at *53-57. First, Plaintiff resides in North Country but not a "very rural" part of it. *See Kohler*, 546 F.3d at 268-69. Rather, she resides in the city of Ogdensburg, within a few miles of the Claxton-Hepburn Medical Center.[10] (*See* T. at 1, 261.)

Second, Plaintiff did not begin receiving treatment from PA Smith until October 2008 and even then did not seek care specifically for her neck until the last visit in September 2009. *Id.* at 355-65. Prior to her application for benefits, Plaintiff only saw PA Smith a total of three times during an eleven month span in 2008-2009. *Id.*; *cf. Kohler*, 546 F.3d at 268-69 (involving a nurse practitioner who treated Plaintiff "for long stretches of time").

Third, PA Smith was not Plaintiff's exclusive medical provider; instead she was treated by a host of other medical professionals. *Cf. Martin*, 2013 U.S. Dist. LEXIS 12504, at *53-54 (finding error where "the ALJ simply disregarded all of the statements rendered by" a physician assistant even though Plaintiff "visited much more often with [the physician assistant] than virtually any other treating physician"); *Duell*, 2010 WL 87298, at *6 ("In this case, the record indicates that Plaintiff was *only* treated by nurse practitioners."). Plaintiff alleges disability dating back to October 2006. (T. at 16). Since 2006, Plaintiff visited the following medical providers: (1) Christopher Horn, M.D., January 2006 (T. at 210); (2) John Savage, M.D., April to

---

[10] Plaintiff previously lived in De Kalb Junction, New York. (T. at 215.) However, during the period she consulted PA Smith, Plaintiff resided in the city of Ogdensburg. *Id.* at 261, 357.

.

June 2006 (T. at 207-08); (3) Physical therapist Deanne Errico, May to June and November to December 2006 (T. at 234-45); (4) Physical Therapist Gary Hoose, December 2006 (T. at 218-19); (5) Michael Ackland, M.D., December 2006 to April 2007 (T. at 250-60); (6) PA Allison Smith, October 2008 to September 2009 (T. at 355-65); (7) Juan-Diego Harris, M.D., November 2009 (T. at 418-20); (8) Justine Magurno, M.D., December 2009 (T. at 371-75); and (9) Ivan Montalvo-Otano, M.D., September 2010 (T. at 424-27).[11]

In sum, *Duell*, 2010 WL 87298, at *6 is inapposite to the case at bar, and the ALJ was not required to give PA Smith's opinion "special consideration." Moreover, the ALJ gave PA Smith's opinion some weight and considered it insofar as it "is generally consistent with the medical evidence of the record in terms of the claimant's ability to perform sedentary work." (T. at 23.) However, the ALJ ultimately found PA Smith's conclusion "that the claimant is unable to work" to be inconsistent with the medical evidence presented and gave her conclusion "no weight." *Id*.

Next, Plaintiff generally contends that "the ALJ's RFC is not supported by substantial evidence." (Dkt. 12 at 21.) The ALJ found that Plaintiff could perform sedentary work with the exception that "she should avoid overhead use of her arms" and that "she is required to take a 10 minute break every two hours." (T. at 19.) He further found that "she is able to perform fine manipulation with her hands." *Id.*

The record demonstrates that while Plaintiff had some limitations, the actual medical

---

[11]    Since, as Plaintiff acknowledges, her "disability was not predicated on her mental health impairments" (Dkt. 12 at 9), this list does not include the medical professionals from whom Plaintiff sought treatment regarding her mental health. Also, this list does not include PA Smith's February 26, 2010, medical source statement as it does not appear that PA Smith saw Plaintiff for treatment on this date. (T. 421-22.)

findings were less severe than Plaintiff has alleged. In April 2006, Plaintiff had full muscle strength, normal sensation, and normal reflexes. (T. at 208.) By June 2006, Plaintiff had some improvement, and her physical examination was benign. *Id.* at 207. She had a lot less impingement pain. *Id.* Physical therapy records show that after 12 sessions, Plaintiff experienced improvement of her symptoms, increased the range of motion of her neck, diminished the intensity and frequency of her headaches, decreased her neck and shoulder pain, and diminished her radicular symptoms. *Id.* at 214.

In October 2006, Plaintiff's cervical spine was normal to inspection, although she had a decreased range of motion. *Id.* at 216. Her cervical spine was non-tender, and she had no pain associated with neck motion. *Id.* Motor function examination was normal. *Id.* There was some diminished strength (greater on the left than on the right), decreased left grip strength, and sensation was normal on the right. *Id.*

An examination in November 2006 showed moderate tenderness in her neck, moderately diminished sensation in her left hand, and normal reflexes. *Id.* at 222. Muscle strength was full in her right upper extremity, and nearly full (4+/5) in the left upper extremity. *Id.* An MRI of Plaintiff's cervical spine taken in November 2006 showed only a "small area of dural ectasia versus a dural cyst" on the left side of the lateral margin of the C6-C7 neural foramina. *Id.* at 233. These results were unremarkable, and regarded as normal. *Id.* at 250.

In December 2006, Plaintiff had mild weakness in left elbow extension. *Id.* at 218. Sensation was decreased on her left hand, and she had slightly less active triceps reflexes on the left. *Id.* Otherwise, her upper extremities were normal. *Id.* at 216. Nerve conduction studies, were within normal limits. *Id.* at 219. By January 2007, Plaintiff's cervical spine was tender, but

she had full range of motion, no pain when rotating her shoulders, and her muscle strength was intact and symmetrical in her upper extremities. *Id.* at 252. Dr. Ackland prescribed no medication, and encouraged Plaintiff to continue home remedies. *Id.* In April 2007, Plaintiff's condition was unchanged. *Id.* at 250.

In September 2009, PA Smith noted that Plaintiff had not seen Dr. Ackland, her treating physician for her neck problems, in over a year. *Id.* at 355. PA Smith assessed diminished strength in Plaintiff's left hand, but normal strength in her right hand. *Id.* at 356. Her deep tendon reflexes were normal, her gait was normal, and she ambulated without assistance. *Id.* Another MRI of Plaintiff's cervical spine at that time was normal. *Id.* at 337-38, 365-66. As late as September 2010, Dr. Montalvo-Olano assessed that Plaintiff's muscle strength in her upper extremities were within normal limits. *Id.* at 425. Her hand grip was adequate in both hands. *Id.* at 425.

The ALJ also relied on the opinion of the consultative examiner, Dr. Magurno, who assessed that Plaintiff's hand and finger dexterity was intact. *Id.* at 372. Her grip strength was full on the right, her dominant hand. *Id.* Grip strength was reduced on the left. *Id.* Dr. Magurno noted the Plaintiff should avoid overhead use of her arms, and found marked limitations for reaching, pushing, pulling, lifting, carrying and neck motion. *Id.* at 374. However, Dr. Magurno assessed no limitations in sitting, standing, walking, and fine motor activities. *Id.*

Additionally, the ALJ noted that Plaintiff's treating physician, Dr. Ackland, found that Plaintiff was not precluded from re-entering the labor force despite her impairments. *Id.* at 23. He noted she would need light duty, no lifting over ten pounds, no repetitive overhead movements, and she would need to limit pushing and pulling duties that would require repetitive

neck motion.  *Id.* at 253.  The ALJ gave this opinion "some weight" and found it "generally consistent with the medical evidence of record.  *Id.* at 23.

Even "the absence of an express rationale for an ALJ's conclusions does not prevent [a reviewing court] from upholding them so long as [the court is] able to look to other portions of the ALJ's decision and to clearly credible evidence [to find] that his determination was supported by substantial evidence.  *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).  Here the ALJ found that Plaintiff had the residual functional capacity for sedentary work not involving overhead use of her arms, and which would allow her a 10 minute break, every two hours.  (T. at 19.)  Therefore, in reviewing the medical evidence, I find the ALJ weighed the conflicting evidence in the record and properly determined Plaintiff's RFC.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (genuine conflicts in the medical evidence are for the Commissioner to resolve).

Accordingly, I find the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.  The record does not reflect PA Smith regularly treated Plaintiff such that PA Smith's opinion would warrant extra consideration.  PA Smith only treated Plaintiff at three office visits and only one of them was related to Plaintiff's neck complaints.  (T. at 355.)  The other credible medical records demonstrate Plaintiff's abilities are consistent with the ALJ's determination of her RFC.

### D.    Step Five: Other Work

Based upon the RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a program aide and an assistant manager within a residential program.  (T. at 24.) Therefore, the ALJ proceeded to step five of the sequential analysis and found there was work in the local and national economies which Plaintiff could perform after applying the Medical-

Vocational Guidelines ("the Grids"). *Id.* at 24-25; *see also* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 414.969(a). Plaintiff argues that the ALJ should have consulted a vocational expert instead of applying the Grids because she suffered nonexertional limitations that "erode the sedentary occupational base withing the meaning of SSR-96-9p" which were not discussed by the ALJ. (Dkt. No. 12 at 20.) I agree that the step five analysis is flawed.

"Exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (finding the ALJ erred in applying the Grids to deny benefits in a case where it was undisputed that the claimant suffered from nonexertional impairments). "The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Id.* (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the Grids).

If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 986) (citations omitted)). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski*

*v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)).  The existence of nonexertional limitations does not automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert.  *Id.*  Where the claimant's non-exertional limitations did not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible.  *Id.* at 411.

Here, the ALJ found that Plaintiff had no limitation in her ability to perform fine finger manipulations and her need to move around after a period of sitting was accommodated in the RFC.  *See* T. at 25; *see also* SSR 96-98 (sedentary work contemplates a break from sitting every two hours).  Thus, he noted that her "additional limitations have little or no effect on the occupational base of unskilled sedentary work."  *Id.*  However, his decision at step five did not review any other nonexertional limitations of the Plaintiff such as her complaints of pain, her marked limitations for reaching, pushing, pulling, and neck motion, and the need to avoid overhead use of her arms as found by consultative examiner Dr. Magurno, whose opinion the ALJ accorded "great weight."  *Id.* at 23-25, 374.  Because the ALJ failed to comment on these nonexertional limitations at step five and whether he found they did or did not impact Plaintiff's ability to perform the full range of sedentary work, i.e. negligible or non-negligible limitations, it is impossible to determine if the decision is based upon substantial evidence or whether the reliance on the Grids was appropriate.  As such, I find the ALJ erred by not determining whether Plaintiff's complaints of pain, and her limitations for reaching, pushing, pulling, and neck motion, and her need to avoid overhead use of her arms were negligible or precluded reliance on the Grids. *See Selian*, 708 F.3d at 421.

Accordingly, on remand the Commissioner should assess whether Plaintiff's complaints of

pain, her limitations for reaching, pushing, pulling, and neck motion, and her need to avoid overhead use of her arms are negligible. If these limitations reduce her ability to find meaningful employment, the Commissioner should obtain testimony from a vocational expert to determine whether, given any such non-negligible limitation(s), Plaintiff is nonetheless able to perform other jobs existing in the national economy.

## IV.    CONCLUSION

The ALJ appropriately conducted his review at steps one through four of the sequential analysis. For those steps, he applied the correct legal standards and his findings therein are supported by substantial evidence. However, on this record it cannot be determined that the step five analysis is supported by substantial evidence or whether the ALJ's reliance on the Grids was appropriate under the facts of this case. Therefore, the matter must be remanded in accordance with this decision.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[12] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[12]    Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 72.


Dated: March 4, 2014
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge